Gina Szeto-Wong, Esq. (SBN: 284883)
Dean Royer, Esq. (SBN: 233292)
**SZETO WONG LAW, a Professional Corporation**
10080 N. Wolfe Rd., Suite SW3-200
Cupertino, California 95014
Phone: (650) 425.6264
Fax: (415) 869.5392
Emails: gina@szetowonglaw.com
       dean@szetowonglaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SETH DONNELLY, MARIA BARAKAT, TARIK SHARIF KANAANA, JUDY TALAUGON, TIMUR MAMEDOV, DEAN JOHANSSON, BUD KETCHUM, LINDA HELLAND, ARTHUR CIANCUTTI, FRANCESCA CIANCUTTI, LAUREL KRAUSE, HOWARD ANDREW COREN, MD, LESLIE ANGELINE, NORMAN SOLOMON, CHERYL DIANNE HIGGINS, CHRISTOPHER JEWELL, JANE JEWELL, CHRIS PERRANDO, ROBIE TENORIO, KATHLEEN L. MCCLAIN, and PAMELA BROWN on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>MIKE THOMPSON, and JARED HUFFMAN,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Class Action<br><br>Constitutional Rights; Declaratory Judgment Action (28 U.S.C. §§ 1331, 2201, 2202) |

# INTRODUCTION

1. Comes now Plaintiffs SETH DONNELLY, MARIA BARAKAT, TARIK SHARIF KANAANA, JUDY TALAUGON, TIMUR MAMEDOV, DEAN JOHANSSON, BUD KETCHUM, LINDA HELLAND, ARTHUR CIANCUTTI, FRANCESCA CIANCUTTI, LAUREL KRAUSE, HOWARD ANDREW COREN, MD, LESLIE ANGELINE, NORMAN SOLOMON, CHERYL DIANNE HIGGINS, CHRISTOPHER JEWELL, JANE JEWELL, CHRIS PERRANDO, ROBIE TENORIO, KATHLEEN L. MCCLAIN, and PAMELA BROWN and allege the following class action claims as Representative Plaintiffs and on behalf of all other persons similarly situated (hereinafter "CLASS MEMBERS") who are taxpayer residents in the U.S. Congressional Districts for which Defendants serve as members of Congress. Plaintiffs allege that Defendants, Congresspersons MIKE THOMPSON and JARED HUFFMAN, exceeded the constitutional limitations on their tax and spend authority by voting to authorize the funding of the Israeli military when they were aware, or should have been aware, that the Israeli military was committing genocide in Gaza, which made their votes a violation of customary international and federal law that prohibits complicity in genocide. Furthermore, Defendants' votes violated multiple other laws and policies, including the Leahy Law, which prohibits aid to foreign security forces that have committed a gross violation of human rights; the Foreign Assistance Act of 1961 and Arms Export Control Act, which prohibit assistance to any country in which the government engages in a consistent pattern of gross violations of internationally recognized human rights and require the advancement of U.S. foreign policy interests consistent with internationally-recognized human rights; and the Conventional Arms Transfer policy, which prohibits U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law. Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes have been and continue to be violated by Defendants' votes to use Plaintiffs' taxes for the unlawful purpose of being complicit in genocide.

## JURISDICTION AND VENUE

2. This action is brought pursuant to the United States Constitution. It is authorized by Article III, Section 2, which extends the federal judicial power to all cases arising in equity under the Constitution. An actual case and controversy exists between the parties because while Plaintiffs allege that Defendants' votes to authorize the funding of the Israeli military was unconstitutional and violated their constitutional rights to have their taxes collected for only lawful purposes, Defendants deny that their votes were unconstitutional. This controversy threatens Plaintiffs' constitutional rights and emotional or psychic health. Plaintiffs have no adequate remedy at law to redress the harms herein, which are of a continuing nature.

3. This Court has jurisdiction pursuant to 28 U.S.C. section 1331 as this action arises under the laws of the United States. This Court can grant declaratory relief in the first instance and later consider further necessary or proper relief, if warranted, pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201, et seq.). Only the Court has the authority to declare Defendants' conduct unconstitutional.

4. A substantial part of the events or omissions giving rise to the claims occurred in the judicial district of the United States District Court, Northern District of California.

## INTRADISTRICT ASSIGNMENT

5. This action arises in the Counties of Sonoma, Yolo, Lake, Mendocino, Marin, and Humboldt, in that a substantial part of the events or omissions which give rise to the claims occurred in those counties. Under Local Rule 3-2(d), all actions that arise in the Counties of Sonoma and Marin shall be assigned to the San Francisco Division or the Oakland Division.

## PARTIES

6. Plaintiff SETH DONNELLY is a federal taxpayer and resident of Sonoma County. Defendant MIKE THOMPSON is DONNELLY's U.S. Congressional Representative.

7. Plaintiff MARIA BARAKAT is a federal taxpayer and resident of Sonoma County. Defendant MIKE THOMPSON is BARAKAT's U.S. Congressional Representative.

8. Plaintiff TARIK SHARIF KANAANA is a federal taxpayer and resident of Sonoma County. Defendant MIKE THOMPSON is KANAANA's U.S. Congressional Representative.

9. Plaintiff JUDY TALAUGON is a federal taxpayer and resident of Sonoma County. Defendant MIKE THOMPSON is TALAUGON's U.S. Congressional Representative.

10. Plaintiff TIMUR MAMEDOV is a federal taxpayer and resident of Yolo County. Defendant MIKE THOMPSON is MAMEDOV's U.S. Congressional Representative.

11. Plaintiff DEAN JOHANSSON is a federal taxpayer and resident of Yolo County. Defendant MIKE THOMPSON is JOHANSSON's U.S. Congressional Representative.

12. Plaintiff BUD KETCHUM is a federal taxpayer and resident of Lake County. Defendant MIKE THOMPSON is KETCHUM's U.S. Congressional Representative.

13. Plaintiff LINDA HELLAND is a federal taxpayer and resident of Mendocino County. Defendant JARED HUFFMAN is HELLAND's U.S. Congressional Representative.

14. Plaintiff ARTHUR CIANCUTTI is a federal taxpayer and resident of Mendocino County. Defendant JARED HUFFMAN is ARTHUR CIANCUTTI's U.S. Congressional Representative.

15. Plaintiff FRANCESCA CIANCUTTI is a federal taxpayer and resident of Mendocino County. Defendant JARED HUFFMAN is FRANCESCA CIANCUTTI's U.S. Congressional Representative.

16. Plaintiff LAUREL KRAUSE is a federal taxpayer and resident of Mendocino County. Defendant JARED HUFFMAN is KRAUSE's U.S. Congressional Representative.

17. Plaintiff HOWARD ANDREW COREN, MD is a federal taxpayer and resident of Mendocino County. Defendant JARED HUFFMAN is COREN's U.S. Congressional Representative.

18. Plaintiff LESLIE ANGELINE is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is ANGELINE's U.S. Congressional Representative.

19. Plaintiff NORMAN SOLOMON is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is SOLOMON's U.S. Congressional Representative.

20. Plaintiff CHERYL DIANNE HIGGINS is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is HIGGINS's U.S. Congressional Representative.

21. Plaintiff CHRISTOPHER JEWELL is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is CHRISTOPHER JEWELL's U.S. Congressional Representative.

22. Plaintiff JANE JEWELL is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is JANE JEWELL's U.S. Congressional Representative.

23. Plaintiff CHRIS PERRANDO is a federal taxpayer and resident of Marin County. Defendant JARED HUFFMAN is PERRANDO's U.S. Congressional Representative.

24. Plaintiff ROBIE TENORIO is a federal taxpayer and resident of Humboldt County. Defendant JARED HUFFMAN is TENORIO's U.S. Congressional Representative.

25. Plaintiff KATHLEEN L. MCCLAIN is a federal taxpayer and resident of Humboldt County. Defendant JARED HUFFMAN is MCCLAIN's U.S. Congressional Representative.

26. Plaintiff PAMELA BROWN is a federal taxpayer and resident of Humboldt County. Defendant JARED HUFFMAN is BROWN's U.S. Congressional Representative.

27. Defendant MIKE THOMPSON is the U.S. Congressional Representative for California's 4th Congressional District.

28. Defendant JARED HUFFMAN is the U.S. Congressional Representative for California's 2nd Congressional District.

## FACTUAL BACKGROUND

29. Plaintiffs SETH DONNELLY, MARIA BARAKAT, TARIK SHARIF KANAANA, JUDY TALAUGON, TIMUR MAMEDOV, DEAN JOHANSSON, BUD KETCHUM, LINDA HELLAND, ARTHUR CIANCUTTI, FRANCESCA CIANCUTTI, LAUREL KRAUSE, HOWARD ANDREW

COREN, MD, LESLIE ANGELINE, NORMAN SOLOMON, CHERYL DIANNE HIGGINS, CHRISTOPHER JEWELL, JANE JEWELL, CHRIS PERRANDO, ROBIE TENORIO, KATHLEEN L. MCCLAIN, and PAMELA BROWN ("CLASS REPRESENTATIVES") were federal taxpayers during the year 2024.

30. CLASS REPRESENTATIVES bring this action individually and as a class action on behalf of all persons similarly situated and harmed by Defendants' conduct, including, but not limited to, the following Class: **All persons who were federal taxpayers during the year 2024 who reside within the federal 2nd or 4th Congressional District of California and have suffered moral and emotional/psychic injury from being made complicit in the ongoing genocide in Gaza**.

31. On January 26, 2024, the International Court of Justice ("ICJ") ruled that the charge made by the South African government — genocide by the Israeli government in Gaza — should not be dismissed and that the case should proceed for ongoing litigation. The ICJ found that at least some of the acts and omissions committed by Israel in Gaza appear to be capable of falling within the provisions of the United Nations Convention on the Prevention and Punishment of the Crime of Genocide ("Convention"). The ICJ made a preliminary ruling ordering that Israel ensure with immediate effect that its military does not commit genocide, take immediate and effective measures to enable the provision of urgently needed basic services and humanitarian assistance to address the adverse conditions of life faced by Palestinians in the Gaza Strip, and take all measures within its power to prevent and punish the direct and public incitement to commit genocide in relation to members of the Palestinian group in the Gaza strip.

32. This Court found on January 31, 2024, that it is plausible that Israel's conduct in Gaza amounts to genocide. *See Defense for Children International-Palestine v. Biden* (N.D. Cal. 2024) 714 F.Supp.3d 1160, 1167, aff'd (9th Cir. 2024) 107 F.4th 926.

33. On February 26, 2024, Amnesty International issued a finding that the Israeli government was defying the January 26, 2024 ICJ ruling. Human Rights Watch made the same finding on the same day.

Both organizations found that the Israeli government was systematically starving the people of Gaza through cutting off aid, water, and electricity, by bombing and military occupation, all underwritten by the provision of U.S. military aid and weapons.

34. On March 24, 2024, Francesca Albanese, the UN Special Rapporteur on the situation of human rights in the Palestinian territories, issued a comprehensive report that found the Israeli government had unequivocally crossed the "threshold" and was actively committing genocide in Gaza.

35. On April 20, 2024, each of the Defendants voted in favor of the Israel Security Supplemental Appropriations Act. This Act allocated $26.38 billion in U.S. taxpayer dollars as military aid to Israel, including, but not limited to, $3.5 billion for the procurement of advanced weapons systems, defense articles, and defense services through the Foreign Military Financing Program; $1 billion to enhance the production and development of artillery and critical munitions; and $4.4 billion to replenish defense articles and defense services provided to Israel.

36. Defendants were aware, or should have been aware, of the rulings and findings described in Paragraphs 31 through 34 that Israel was actively engaged in committing genocide before voting in favor of the Israel Security Supplemental Appropriations Act. Prior to their vote, Defendants were made further aware of Israel committing genocide by their constituents who communicated and/or attempted to communicate with them (by letter, phone, and/or in person) to urge each of them to not vote in favor of the Israel Security Supplemental Appropriations Act.

37. The U.S. government implemented the Convention in 1987 by passing the Genocide Convention Implementation Act. The U.S. government ratified the Convention in 1988. Although the ratification included several reservations, there was no ratifying reservation with respect to Article III of the Convention, which establishes that "complicity in genocide" is a crime. The crime of complicity in genocide is found at 18 U.S.C. section 1091.

38. The U.S. Congress approved what is known as the Leahy Law (*See* 10 U.S.C. § 362; 22 U.S.C. § 2378d) in 1997. This law's purpose is to prevent the U.S. from being implicated in serious crimes committed by foreign security forces that it supports by cutting off aid to a specific unit if the U.S. has credible information that the unit committed a gross violation of human rights. The law requires the U.S. government to vet foreign security forces and to terminate U.S. aid to those that fail to remediate human rights abuses.

39. The U.S. State Department has refused to carry out the vetting process required by the Leahy Law with respect to military aid to Israel, as found by human rights organization DAWN in an April 30, 2024 report.

40. Senator Patrick Leahy, who is the namesake for the Leahy Law, stated on May 23, 2024, that "Since the Leahy law was passed, not a single Israeli security force unit has been deemed ineligible for U.S. aid, despite repeated, credible reports of gross violations of human rights and a pattern of failing to appropriately punish Israeli soldiers and police who violate the rights of Palestinians."

41. Defendants' April 20, 2024 votes also violated of the Foreign Assistance Act of 1961 (22 U.S.C. § 2151 *et seq*.) and Arms Export Control Act (22 U.S.C. § 2271 *et seq*.), which prohibit assistance to any country in which the government engages in a consistent pattern of gross violations of internationally recognized human rights, and require the advancement of U.S. foreign policy interests consistent with internationally-recognized human rights. The votes to allocate U.S. taxpayer dollars as military aid to Israel included arms sales that are directly tied to tens of thousands of civilian deaths in Gaza.

42. Defendants' April 20, 2024 votes further violated the Conventional Arms Transfer policy, which prohibits U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law.

43. Starting shortly after the April 20, 2024 votes, published reports provided further indication that the votes were illegal. On May 29, 2024, the Research Society of International Law published a report,

America's Complicity in the Crime of Genocide in Gaza, which found that the U.S. government had violated Article III of the Convention with respect to funding Israel's military activities in Gaza. On December 5, 2024, Amnesty International concluded after extensive investigation that Israel is committing genocide against Palestinians in Gaza (https://www.amnesty.org/en/latest/news/2024/12/amnesty-international-concludes-israel-is-committing-genocide-against-palestinians-in-gaza/).

44. CLASS REPRESENTATIVES and CLASS MEMBERS have standing to bring this class action under *Flast v. Cohen* (1968) 392 U.S. 83. With this class action, CLASS REPRESENTATIVES and CLASS MEMBERS challenge Defendants' votes on April 20, 2024 in favor of the Israel Security Supplemental Appropriations Act, which was an exercise of tax and spend power by Defendants that extracted the tax money of CLASS REPRESENTATIVES and CLASS MEMBERS. Furthermore, CLASS REPRESENTATIVES and CLASS MEMBERS allege that Defendants' votes and extractions of their tax money exceeded the constitutional limits on tax and spend power by allocating taxpayer funds for an illegal purpose, namely in violation of the prohibition of complicity in genocide (18 U.S.C. § 1091), the Leahy Law, the Foreign Assistance Act of 1961 and Arms Export Control Act, and the Conventional Arms Transfer policy, rather than for the general welfare.

45. CLASS REPRESENTATIVES have suffered and continue to suffer concrete, particularized, and actual or imminent injury as a result of DEFENDANTS' conduct. Each of the CLASS REPRESENATIVES has experienced moral injury caused by Defendants' votes in favor of the Israel Security Supplemental Appropriations Act, which forced the CLASS REPRESENTATIVES to be complicit in the genocide carried out by the State of Israel in Gaza due to the tax dollars paid by CLASS REPRESENTATIVES being used to fund Israeli military activity in Gaza. This moral injury has manifested in emotional or psychic distress experienced by all CLASS REPRESENTATIVES, including, but not limited to, symptoms such as bouts of uncontrollable weeping, inability to sleep, distractions from

work, despair for the future of their children and humanity, inability to experience joy, feelings of guilt, social isolation, and anxiety. The foregoing injury has been ongoing since April 20, 2024.

46. This action has been brought and may be properly maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation, and the proposed Class is easily ascertainable.

47. **Numerosity:** A class action is the only available method for the fair adjudication of this controversy. The CLASS MEMBERS are so numerous that joinder of all members is impractical, if not impossible, insofar as CLASS REPRESENTATIVES are informed and believe and, on that basis, allege that there are sufficient class members to meet the numerosity requirement. Membership in the Class will be determined upon analysis of federal taxpayer status and residency within the federal 2nd or 4th Congressional District of California.

48. **Commonality:** CLASS MEMBERS share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not limited to, whether Defendants exceeded the constitutional limits on tax and spend authority when voting in favor of the Israel Security Supplemental Appropriations Act.

49. **Typicality:** CLASS REPRESENTATIVES' claims are typical of the claims of the other class members. CLASS MEMBERS are individuals residing within the Congressional Districts for which one of the Defendants is the representative who have experienced moral injury caused by Defendants' votes in favor of the Israel Security Supplemental Appropriations Act, which forced the CLASS MEMBERS to be complicit in the genocide carried out by the State of Israel in Gaza due to the tax dollars paid by CLASS MEMBERS being used to fund Israeli military activity in Gaza. CLASS MEMBERS' moral injuries have manifested in the same ongoing emotional or psychic distress as that experienced by CLASS REPRESENTATIVES.

50. **Superiority of Class Action:** Since the damages suffered by individual members of the Class, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make, or may make, it impractical for CLASS MEMBERS to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual class member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings that might be dispositive of the interests of other class members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

51. **Adequacy of Representation:** CLASS REPRESENTATIVES are adequate representatives of the CLASS MEMBERS. CLASS REPRESENTATIVES' claims are typical of those of the CLASS MEMBERS, and CLASS REPRESENTATIVES have the same interest in the litigation of this case as the CLASS MEMBERS. CLASS REPRESENTATIVES are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. CLASS REPRESENTATIVES are not subject to any individual defenses unique from those conceivably applicable to the CLASS MEMBERS as a whole.

52. **Class Period** is designated as the period beginning on April 20, 2024, based on the allegations that the violations giving rise to the causes of action occurred on that date and have caused harm from that date to the present and will continue to cause harm in the future.

53. If this Court should issue a declaratory judgment to resolve this actual constitutional case and controversy between the parties as to whether Defendants' April 20, 2024 votes in favor of the Israel Security Supplemental Appropriations Act violated and continues to violate CLASS MEMBERS constitutional rights as described herein, the Court will have ordered a change in legal status that would have practical consequences. A declaratory judgment would significantly increase the likelihood that CLASS MEMBERS would obtain relief to have their constitutional right to have their taxes collected for

only lawful purposes. The ongoing injuries suffered by CLASS MEMBERS caused by Defendants will end, providing substantially meaningful redress of their injuries.

Wherefore, Plaintiffs pray for relief as set forth below.

### FIRST CAUSE OF ACTION
Violation of Ninth Amendment and Article I, Section 8 of the Constitution
(Against All Defendants)

54. Plaintiffs, on behalf of themselves individually and the proposed Class, reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. Protecting the human rights of individuals within the United States and abroad is deeply rooted in this nation's history and tradition.

56. The Ninth Amendment to the U.S. Constitution provides that the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

57. Article I, Section 8 of the U.S. Constitution establishes Congress' power to lay and collect taxes but only for the common defense and general welfare of the United States. When taxes are collected and allocated for unlawful purposes, the general welfare is not served.

58. Pursuant to the Ninth Amendment and Article I, Section 8 of the U.S. Constitution, there is an implied right to not have one's taxes be collected for unlawful purposes. Plaintiffs hold these inherent, inalienable, natural, and fundamental rights.

59. The acts of Defendants have unconstitutionally caused, and continue to cause, a violation of Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes because said taxes have been and continue to be used for the unlawful purpose of complicity in genocide.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set forth below.

## SECOND CAUSE OF ACTION
*Bivens* action
(Against All Defendants)

60. Plaintiffs, on behalf of themselves individually and the proposed Class, reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 of this Complaint as if fully set forth herein.

61. Protecting the human rights of individuals within the United States and abroad is deeply rooted in this nation's history and tradition.

62. Article I, Section 8 of the U.S. Constitution establishes Congress' power to lay and collect taxes but only for the common defense and general welfare of the United States. When taxes are collected and allocated for unlawful purposes, the general welfare is not served.

63. There is an implied right to not have one's taxes be collected for unlawful purposes. Plaintiffs hold these inherent, inalienable, natural, and fundamental rights.

64. Defendants acted under color of federal authority when they voted in favor to allocate Plaintiffs' taxpayers dollars as military aid to Israel.

65. The acts of Defendants have unconstitutionally caused, and continue to cause, a violation of Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes because said taxes have been and continue to be used for the unlawful purpose of complicity in genocide.

66. The violation of Plaintiffs' constitutional rights has caused substantial damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against each defendant as follows:

1. That the Court declare, adjudge, and decree that the causes of action are proper class action causes of action and certify the proposed class and/or any appropriate subclasses under Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court declare, adjudge, and decree that Defendants exceeded the constitutional limits on tax and spend authority when voting in favor of the Israel Security Supplemental Appropriations Act, and violated and continue to violate the Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes;

3. That the Court declare, adjudge, and decree that Defendants violated their duty under customary international law, as part of federal common and statutory law, that prohibits complicity in genocide by voting in favor of the Israel Security Supplemental Appropriations Act knowing that the votes would result in the enabling and facilitating of Israel's commission of genocidal acts against the Palestinian people of Gaza;

4. That the Court declare, adjudge, and decree that Defendants, by voting in favor of the Israel Security Supplemental Appropriations Act, violated their duty under federal common and statutory law that prohibits aid to foreign security forces that have committed a gross violation of human rights, assistance to any country in which the government engages in a consistent pattern of gross violations of internationally recognized human rights, and U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law;

5. For all available injunctive, equitable, and other relief, including but not limited to an injunction restraining Defendants from providing, facilitating, or coordinating military assistance or financing to Israel that advances Israel's commission of genocidal acts in Gaza, including, but not limited to, any additional allocation of U.S. taxpayer dollars as military aid to Israel;

6. For compensatory damages, according to proof;

7. For reasonable attorneys' fees and costs, according to proof on each cause of action for which such remedies are available; and

8. For such other and further relief as the Court deems proper and just.

Under Local Rule 3-6(a), Plaintiffs demand a jury trial.

DATED: December 19, 2024

By:   _/s/Dean Royer_____
DEAN ROYER, ESQ.
GINA SZETO-WONG, ESQ.
Attorneys for Plaintiffs
Szeto-Wong Law Firm