Seth Donnelly, Pro Se
17619 Johnson Ave.
Sonoma, CA 95476
phone: 650-814-8495
Email: Seth007donnelly@gmail.com
Lead Plaintiff

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SETH DONNELLY et al.<br><br>Plaintiffs,<br><br>vs.<br><br>MIKE THOMPSON et al.<br><br>Defendants. | CASE NO. 3:24-cv-09213-VC<br><br>**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**<br><br>**DOCUMENT 18, DATED JANUARY 23, 2025** |

## I. INTRODUCTION

Plaintiffs respectfully submit this response to your Honor's Order, in good faith, to demonstrate that we, as Plaintiffs, have Article III standing and that our lawsuit is not "frivolous" in any way. Plaintiffs believe our lawsuit is grounded in a correct interpretation of the Constitution, case law, US federal laws, and international law. Plaintiffs urge you to allow the case to proceed. We are asking this court to affirm our right, as federal income taxpayers, to NOT to have our tax dollars unconstitutionally allocated to fund genocide.

The US Supreme Court has affirmed the right of taxpayers to file a class action lawsuit when their tax dollars were used by government officials in an unconstitutional manner (*Flast v. Cohen*, 392 U.S. 83, 102, (1968) […" a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, s 8, of the Constitution."]). Per the *Flast* ruling, just as government officials cannot allocate our tax dollars into private religious schooling, thereby breaching the Establishment Clause, they likewise cannot allocate our tax dollars into funding genocide. Such allocation violates Article 1, Section 8 that gives Congress the responsibility to conduct its tax and spend authority according to the "general welfare" and the "common defense."

While the US Supreme Court recognized in *United States v. Butler,* 297 U.S. 1 (1936) that the power of Congress to authorize the expenditure of tax dollars is broad, it nonetheless must conform to the "general welfare" or "common defense." This spending power is of course not unlimited, *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, (1981), but is instead subject to several general restrictions, the first of which is derived from the language of the Constitution itself: the exercise of the spending power must be in pursuit of "the general welfare." (See *Helvering v. Davis,* 301 U.S. 619, 640–641, (1937); *United States v. Butler, supra,* at 65.) No amount of deference to Congress for their allocation of a large percentage of our tax dollars to fund the genocide in Gaza should be found to conform to "general welfare" or the "common defense."

This fiscal allocation also violates Article VI of the U.S. Constitution that establishes treaties ratified by the U.S. government as the "supreme law of the land." In 1988, the U.S. government

2

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

ratified the Convention for the Prevention and Punishment of the Crime of Genocide. (See https://ihl-databases.icrc.org/en/national-practice/genocide-us-code-title-18-chapter-50a-1988).

**Though it did so with some exemptions, it did not exempt itself from Article III of the Convention, prohibiting "complicity in genocide."** This was re-affirmed by the 2007 Genocide Accountability Act (Public Law 110-151) which made both citizens and non-citizens liable for acts of genocide whether inside or outside borders of the United States. (*See* https://www.govinfo.gov/app/details/PLAW-110publ151). In the words of Representative Maxine Waters, "Genocide is a heinous and despicable crime, which contradicts all of the values we in America hold dear. We must use every tool at our disposal to stop genocide from occurring and to hold those who commit genocide responsible for their actions." ("Genocide and the Rule of Law" waters.house.gov, Aug 3, 2000, at https://waters.house.gov/media-center/committee-remarks/genocide-and-rule-law).

What has happened in Gaza over the past 16 months is unequivocally genocide, as documented in comprehensive reports by UN officials, Amnesty International, Human Rights Watch, and Doctors Without Borders, among many other credible sources. It is clear that this ongoing genocide has been made possible and is funded by our tax dollars.

As plaintiffs, we are not asking this Court to make "foreign policy", thereby abridging the "political doctrine" and separation of powers. We are asking this Court to intervene when our Congresspersons have unconstitutionally used our tax dollars to fund genocide. The Ninth Amendment gives us a reserved right to have our tax dollars used in a manner consistent with the Constitution, as explained below.

**II. JURISDICTION**

This Court has jurisdiction pursuant to § 1331 of the United States Code, as this action is a civil action that arises under the Constitution, laws, or treaties of the United States.

**III. ARGUMENT**

**A. Plaintiffs Have Standing to Pursue This Action Under Article III**

In *Flast v. Cohen*, the Supreme Court spelled out the requirements for a federal taxpayer to

3

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

establish a stake in a congressional enactment sufficient to invoke Article III standing. 392 US 83, 103-104 (1968). First, the challenged legislation must be an exercise of congressional power under the taxing and spending clause of Article I, § 8, of the U.S. Constitution. Second, "the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. (*Id*.) The congressional taxing and spending power is both limited to provision of the nation's common defense and general welfare, and subject to treaty obligations .(*See*, e.g., *McClanahan v. Arizona Tax Comm'n*, 411 US 164 (1973); *Mitchell v. Laird*, 488 F. 2d 611 (D.C. Cir. 1973). Here, federal taxpayers challenge the constitutionality of the Israel Security Supplemental Appropriations Act, an exercise of Congress's taxing and spending power under Article 1, section 8. This enactment neither provides for the nation's common defense and general welfare nor complies with the United States's treaty obligations under Article I of the Genocide Convention.

      Finally, to establish Article III standing, Plaintiffs must demonstrate an injury in fact, causation, and redressability. Plaintiffs, as federal taxpayers, have suffered a concrete and particularized injury due to the unconstitutional allocation of their tax dollars for military aid to Israel, which they allege is complicit in genocide in Gaza. (Amended Complaint, ¶ 81). This moral injury has manifested in emotional and psychic distress, including symptoms such as anxiety and social isolation. (*Id*). The injury is directly traceable to Defendants' votes in favor of the Israel Security Supplemental Appropriations Act, which allocated $26.38 billion in U.S. taxpayer dollars for military aid to Israel. (*Id* at ¶ 69). A favorable court decision declaring the Act unconstitutional and enjoining its continued enforcement would redress Plaintiffs' injuries by ensuring their taxes are not used for unlawful purposes. The Supreme Court in *Steel Co. v. Citizens for a Better Environment* established that standing requires a plaintiff to demonstrate an injury in fact, causation, and redressability.  Plaintiffs have clearly articulated these elements:

    1.    **Injury in Fact**: Plaintiffs allege concrete and particularized injuries, including moral and emotional distress, resulting from the use of their tax dollars to fund activities they assert

4

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

are complicit in ongoing genocide. (Am. Cmplt., ¶ 81). The decision by our Congresspersons to send $26.38 billion more in military aid to Israel on April 20th, 2024– made in the face of overwhelming evidence of how such aid was facilitating an escalating genocide and against the wishes of the vast majority of their constituents– has resulted in very real harm to our class. The harm of "moral injury," of being forced to be complicit in genocide, is real and empirically verifiable. It is ongoing. We are in a place in history where ordinary citizens must stand up in every way possible to stop a well-documented genocide as it plays out in front of their eyes, to prevent harm to the Palestinians as well as to the Plaintiffs themselves.

The trauma of being forced into becoming complicit in genocide was extensively studied in Germany after WWII. It is real. Carl Jung identified it as collective guilt, noted its pervasiveness, the importance of treatment and differentiated between the guilt of those active in the perpetration of the genocide, and the masses of Germans who did nothing to prevent it. (*See* "The Collected Works of C. G. Jung, Vol. 10: Civilization in Transition Hardcover – January 1, 1964 by C.G. Jung" (CW 10 ¶s 400-443.) Both groups suffered from collective guilt, which has afflicted their children and grandchildren, as well. The very existence of this lawsuit documents the existence of the same psychic trauma among our population, and an attempt to mitigate it by taking legal action.

More plainly, the difference between plaintiffs and taxpayers at large is that plaintiffs are intensely distressed by the genocide, whether because of our moral beliefs, our grounding in history, our values, our connection to the land or people of Gaza or Israel, or the degree to which we are empathetic and open hearted. Indeed, if this case proceeds further, Plaintiffs can show that many suffer from what a physicians' group has labeled "[being] Sick From Genocide," which is described as specific physical and mental health symptoms. (*See* https://doctorsagainstgenocide.org/sick-from-genocide-faqs).

Further, Plaintiffs are prepared to provide extensive, medically documented evidence to this Court of the harm they have suffered as a direct consequence of being forced to be complicit in genocide due to the actions of Defendants. While all class members share this harm in common, it manifests differently for individual members. For Palestinian plaintiffs, the harm has been

5

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

particularly personal and acute, having been forced to be complicit in the slaughter of their own people and families. **One such plaintiff has been subjected to the killing of 211 of his family members in Gaza during this genocide.** For many Plaintiffs, it manifests and is well documented medically as insomnia, depression, anxiety, and other mental conditions requiring treatment and medication.

    2.    **Causation**: The alleged injuries are directly traceable to the Defendants' votes in favor of the Israel Security Supplemental Appropriations Act, which allocated funds for military aid to Israel. (Amended Complaint, Par. 69). Plaintiffs contend that these votes exceeded constitutional limits and facilitated violations of international law (Amended Complaint, Par. 75). This causal link is clear and unbroken, distinguishing this case from *Steel Co. v. Citizens for a Better Environment*, where the Court found no causal connection between the alleged injury and the Defendant's conduct. At the time leading up to the vote, polls of the American Public showed that the majority disapproved of Israeli actions, yet Congress proceeded anyway. (*See* https://news.gallup.com/poll/642695/majority-disapprove-israeli-action-gaza.aspx.)

    Defendants may believe their actions to fund Israel with taxpayers dollars will be shielded by the "speech and debate" clause in Article 1, Sec. 6 of the Constitution. But this clause was designed to protect the Congressmembers' freedom of speech, not their freedom to commit the world's worst crime. Moreover, by supporting the genocide in Gaza, Congress is violating the Leahy Laws, which prohibit it from supplying military support to countries which commit human rights violations. The Constitution does not shield people from the act of genocide - even if it is done within the legislative context.  Congress people are still liable for criminal acts. (*Kilbourn v Thompson,* 103 U.S. 168, 203 1881.)  The federal laws alleged to be violated by Defendants are The Leahy law, Foreign Assistance Act 1961, the Arms Export Control Act, the Conventional Arms Transfer policy, Customary international laws, and Art 6 of the US Constitution which makes laws and treaties the supreme law of the land (Am. Cmplt, Pars. 72-77).

    3.    **Redressability**: Plaintiffs seek declaratory and injunctive relief to prevent further unconstitutional use of their tax dollars, which would redress their injuries by ensuring compliance

with constitutional and international legal standards. The Court's order cites *Steel Co. v. Citizens for a Better Env't*, 523 U.S.83, 89 (1998) to challenge Plaintiffs' standing under Article III to bring this case. Because injunctive relief is forward-looking, a plaintiff seeking such relief cannot simply allege a past injury but must allege (and eventually prove) "a continuing violation or the imminence of a future violation." *Id* at 108.

The harm in Plaintiff's case is ongoing and redressable through the declaratory and injunctive relief sought in the complaint. The Israel Security Supplemental Appropriations Act authorizes its support for Israel's military to be allocated in stages and has not yet been fully allocated. The allocations of funds can be made until September 30, 2026. See (See https://www.congress.gov/bill/118th-congress/house-bill/8034). This case presents a direct challenge to the constitutionality of congressional spending, thus satisfying the requirements for taxpayer standing.

**II. Relief Sought**

Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages. They request the Court to declare the Israel Security Supplemental Appropriations Act unconstitutional and to enjoin its enforcement. (Am. Cmplt, ¶ 109). Such relief is appropriate given the alleged violations of the Ninth Amendment, Article I, Section 8, and Article 6 of the U.S. Constitution, which protect Plaintiffs' rights to have their taxes collected for lawful purposes (Am. Cmplt, ¶¶ 90-108). Plaintiffs also seek compensatory damages for the emotional and psychic distress caused by Defendants' actions. (*Id* at p.21). Such relief is appropriate and necessary to prevent further violations of Plaintiffs' constitutional rights and to uphold the rule of law.

**III. Judicial Involvement is Appropriate pursuant to 28 U.S.C., § 1331**

While the Court may have concerns about engaging in foreign policy matters, it is well within the judiciary's purview to adjudicate cases involving constitutional violations, even when they intersect with foreign policy. The judiciary has a duty to ensure that all branches of government act within their constitutional limits. The Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., empowers federal courts to declare the rights and legal relations of interested parties, providing a

7

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

remedy for ongoing constitutional violations. In *Massachusetts v. Mellon*, 262 U.S. 447 (1923), the Court acknowledged that declaratory relief is appropriate where a substantial controversy exists between parties with adverse legal interests. Plaintiffs' claims present such a controversy, as they challenge the constitutionality of the Israel Security Supplemental Appropriations Act, which they allege facilitates genocide in violation of international and federal law. In *Bhambra v. Illston*, the court recognized the necessity of judicial intervention when constitutional rights are at stake, even in complex contexts. Here, Defendants violated their obligations to prevent and avoid complicity in genocide under Article I of the Genocide Convention; and that the United States' provision of military and other assistance to the Israeli government, authorized by the vote of Defendants made Plaintiffs complicit in genocide in violation of Article III(e) of the Genocide Convention and its implementing legislation, 17 U.S.C. § 1091, which makes genocide a federal crime. Here, legislators are violating their own laws. (Genocide Accountability Act of 2007, https://www.congress.gov/bill/110th-congress/senate-bill/888/text.)

If Congress or the Executive wishes to pursue an illegal foreign policy, it must find means to do so that do not require members of Congress to exceed their constitutional authority. The fact that the options for carrying out that policy would be restricted is not unique to this situation. As an extreme but parallel example, if the executive branch decided Iran needs to be dealt with more harshly than is currently the case with sanctions, presumably courts would interfere if the means sought included drafting Americans and forcing them to serve as suicide bombers. Such relief would clearly be necessary despite entering the realm of foreign policy.

Courts have historically intervened in foreign policy matters when constitutional rights are implicated. In *Baker v. Carr*, 369 U.S. 186 (1962), the Supreme Court held that courts have the authority to adjudicate constitutional claims even when they intersect with foreign policy, provided the issues are justiciable and do not present a political question. The political question doctrine is not applicable here because the case involves judicially manageable standards and does not require the Court to make policy determinations. Plaintiffs' claims are grounded in constitutional violations, specifically the misuse of taxpayer funds for unlawful purposes, which are within the purview of

8

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**

judicial review. Plaintiffs' claims do not seek to dictate foreign policy but rather to ensure that congressional actions adhere to constitutional and statutory limitations, including the prohibition against complicity in genocide under 18 U.S.C. § 1091. Moreover, the fact that international law is implicated does not convert this matter into litigation over foreign policy.

## IV. Conclusion

Due to the time limitations for this response, Plaintiffs are willing to provide supplemental briefing should the Court require it, at which point we expect to be working with a new firm. For the foregoing reasons, Plaintiffs respectfully request that the Court, upon further consideration, remedy this ongoing harm through any or all types of relief: declaratory, injunctive, and compensatory. Without such relief, there will be impunity. And with impunity, there will be no safeguards against ongoing illegal use of our tax dollars to fund genocide. Is it not the purpose of the Judicial Branch to protect the Constitution, address violations of federal laws, and prevent these types of abuses?

DATED: January 30, 2025

By: *Seth Donnelly*

Seth Donnelly, Lead Plaintiff, Pro Se

9

*Seth Donnelly, et al. v. Mike Thompson, et al.*
U.S. District Court
**PLAINTIFFS' RESPONSE TO COURT ORDER TO SHOW CAUSE**